UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
v. : CR NO: 06-05-02-S
:
VANHHATDY SOUVANAXAB :

**GOVERNMENT'S MOTION FOR UPWARD DEPARTURE**

The United States hereby moves for an Upward Departure for the reasons stated in the attached memorandum of law.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Richard W. Rose
RICHARD W. ROSE
Assistant United States Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001 (fax)
email: richard.rose@usdoj.gov

**CERTIFICATION OF SERVICE**

I hereby certify that on this 29th day of August, 2006, I caused the within Government's Motion For Upward Departure to be electronically filed with the United States District Court for the District of Rhode Island, using the CM/ECF system. The following participant has received noticed electronically and by fax:

William C. Dimitri, Esq.
462 Broadway
Providence, RI 02909

I further certify that I caused a copy to be mailed by regular mail and fax to:

Robert E. Craven, Esq.
50 Park Row West, Suite 100
Providence, RI 02903

Maureen Bradley
U.S. Probation Officer
U.S. Probation Office
36 Exchange Terrace
Providence, RI 02903

/s/ Richard W. Rose
Richard W. Rose
Assistant United States Attorney

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :
:
v. : CR NO: 06-05-02-S
:
VANHHATDY SOUVANAXAB :

**GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR UPWARD DEPARTURE AND SENTENCING MEMORANDUM**

## I. INTRODUCTION

On June 2, 2006 the defendant, Vanhhatdy Souvanaxab, and his co-defendant Bobby Soundara, pled guilty to a two count indictment charging them with knowing possession of an unregistered pipe bomb in violation of 26 U.S.C. §§ 5841, 5861(d) and 5871 (Count I) and with damaging and destroying by fire a building which also resulted in personal injury, in violation of 18 U.S.C. § 844(i)(Count II).

This memorandum is in support of a motion for upward departure based primarily on the victim's injuries and is a response to the defendant's sentencing memorandum.[1] It is also notice of the government's intention to present a witness or witnesses at the sentencing hearing to establish the nature and extent of the defendant's gang affiliations and rivalries.

---

[1]Two other grounds may exist for an upward departure though the government is pressing neither. See USSG § 5K2.3 (Extreme Psychological Injury ) and § 5K2.5 (Property Damage or Loss). The Court may wish to revisit the Psychological Injury provision after the victim presents her allocution at sentencing.

## II. FACTS

On September 11, 2005, at approximately 2:00 a.m., several members of the Laos Pride street gang, traveling in three cars, went to the home of Samang Tep located at 1 West Harry Street, Cranston, RI. Tep was a member of the rival Young Bloods street gang. Among the Laos Pride members present in the caravan were defendant, Vanhhatdy Souvanaxab and co-defendant Bobby Soundara.

When the Laos Pride gang arrived at the West Harry Street home co-defendant Bobby Soundara took a homemade pipe bomb, lit the fuse, and threw the bomb through the first floor window. At the time, Souvanaxab knew that it was the home of a rival Young Blood. Tep was not home, however. In the house were Tep's mother and Mrs. Tep's grandchild. Awakened by the sound of breaking glass, Mrs. Tep approached the flaming pipe bomb just as the end blew off and caused Mrs. Tep to lose an eye. She also suffered several body lacerations.

Several items were seized from the scene and sent to the ATF Laboratory for analysis. These items included : a 6" long piece of galvanized pipe partially wrapped in white tape with red lettering "CRAFTED WITH PRIDE IN U.S.A."; pieces of silicone-like material; pieces of hardwood floor damaged by the explosion; a section of wall from the blast area; and wood from the exterior wall outside the blast area. In addition, a piece of silicone-like material removed from Mrs. Tep's leg was obtained from Rhode Island Hospital and sent to the ATF Laboratory.

The ATF Laboratory determined, in common parlance, that the seized item was a pipe bomb. The ATF Laboratory found residue of a perchlorate explosive mixture ("PEM") inside the pipe. PEM is the powder commonly used in fireworks. The silicone-like material was determined to be a hot-melt adhesive. Fragments of a green pyrotechnic fuse were embedded in the adhesive.

On November 16, 2005, defendant Vanhhatdy Souvanaxab was interviewed by ATF agents. The interview was video recorded. Souvanaxab admitted that he is a member of Laos Pride. See Interview Transcript, dated November 16, 2005, p. 3. He also admitted that Laos Pride and Young Bloods are rivals. Id. @ p. 28. He said he heard other members of Laos Pride talking about pipe bombing a house the night before September 11. Id. @ p. 13 ("I heard them say they were going to do it, but I didn't know which house it was going to be.") Id. "Q: Who said he was going to do it? A: Bobby." Id. He admitted that on September 11, 2005, prior to the bombing, he was present at co-defendant Soundara's house and saw a pipe bomb being passed around that Souvanaxab admitted he made. He admitted to manufacturing four such bombs. Id. @ p. 57-8. He stated that he and Soundara, as well as others, purchased the fireworks used to make the bomb in New Hampshire. Id. @ p. 45.

Vanhhatdy Souvanaxab said he obtained the galavanized pipe used to make the four bombs from the trash at his place of employment and that he stole the hot glue gun and two glue sticks

from a former employer. Id. @ p. 62; 56-7. Souvanaxab said he made the bombs by using the glue gun to direct glue to one end of the pipe. He inserted powder from "Whistling Pete" fireworks into the pipe from the open end and sealed the pipe by putting glue into the remaining open end along with a fuse.

2. Gang Affiliation

The defendant is an admitted member of Laos Pride. The victim in this case is the mother of a member of a rival gang -- the Young Bloods. The government believes that an overview of the tension and history of the gangs supports its motion for an upward departure and underscore its view that a serious sentence is warranted in this case particularly in light of the statutory sentencing factors mandating punishment and deterrence. See 18 U.S.C. §§ 3553(a)(2)(A) and (B).

Rhode Island is not immune from the burgeoning gang problems affecting the United States. While not as severe as some Districts, it is none the less present and measurable. There are some twenty or so active gangs in the District chiefly, though not exclusively, located in the City of Providence.

Some of the names are fairly familiar and have international affiliates, (Latin Kings, MS-13, Bloods, Crips) and others are named for a single Providence street (Hanover Boyz). Generally, gangs engage in a variety of criminal activity including drug distribution, assaults with deadly weapons, drive by shootings, and illegal weapon possession. There is no evidence that Laos

Pride participated in drug distribution.

Laos Pride, also known as “LP,” “1216" has over forty members and associates. They are a “Crip” based gang which means, among other things, that they have rivalries with “Blood” gangs, including the Providence based Young Bloods, also known as “YB” and “242".

## III. <u>ARGUMENT</u>

### A. <u>Upward Departure</u>

The government believes that the Probation Officer has correctly calculated the applicable advisory guideline level in this case. The defendant has a total offense level of 21 and a Criminal History Category of I. The guideline range is 37-46 months. Count II carries a statutory mandatory minimum sentence of 84 months (7 years).

For all of the following reasons, the government believes an upward departure is warranted.

#### 1. <u>The Significant Personal Injuries In this Case Warrant An Upward Departure</u>

An upward departure is warranted where significant personal injuries result from the offense.

> If significant physical injury resulted, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extend to which the injury was intended or knowingly risked. When the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure

> may be appropriate. If the injury is less serious or if the defendant (though criminally negligent) did not knowingly create the risk of harm, a less substantial departure would be indicated. In general, the same considerations apply as in §5K2.1.

USSG § 5K2.2.

The Section 5K2.1 factors referenced in the preceding guideline refer to upward departures where death results from the offense conduct. These factors are: 1) the dangerousness of the defendant's conduct; 2) the extent to which death or serious injury was intended or knowingly risked; and 3) the extent to which the offense level for the offense of conviction already reflects the risk of personal injury. See USSG § 5K2.1 Death (Policy Statement).

In assessing these factors, it is clear the victim in this case suffered a major permanent disability. It is also undisputable that the conduct in this case was gang motivated and intentional. The defendant's conduct was obviously dangerous. There is a knowing risk of death or serious injury when one simply possesses a pipe bomb, never mind where the pipe bomb is lit and thrown into (at) a residence at 2:00 a.m. The defendant admits making (4) pipe bombs and only two have been accounted for. The only factor appearing to weigh in the defendant's favor is the extent to which personal injury is already taken into account in his guideline calculations. Here the guidelines assigned a four level increase because the possession of the pipe

bomb was used in connection with another felony offense i.e., damaging a building by means of an explosive which resulted in personal injury. See PSR @ ¶ 16. This is misleading, however, because these same four levels would have been added if no personal injury had resulted because damaging a building by means of an explosive is "in connection with another felony offense" which is the thing required by the § 2K2.1(b)(5) enhancement. Thus all of the guideline factors for an upward departure are present to a substantial degree. Even conceding arguendo that the defendants didn't mean to harm anyone -- the act was so reckless and the injuries so severe, that a significant upward departure is warranted.[2] The defendant knew the night before, according to his own admissions, that Laos Pride was going to bomb someone's house. Interview Transcript, @ p.13. He had plenty of time to withdraw from the attack but he chose to participate anyway. This was not some prank. This was not done so the gang could hear the bang of the explosion. They went to the Young Bloods' house in three cars to inflict harm.

The real question in this case is how much of an upward departure is appropriate. The government is aware of the advisory nature of the guidelines and the touchstone requirement

[2] The issue of whether the defendants had the specific intent to hurt someone (as opposed to the intent to throw a pipe bomb) is a close call. Indeed, but for its closeness, the government would be arguing that the appropriate guideline section to apply is Attempted Murder pursuant to USSG § 2A2.1 where the base offense level would be 33.

that a sentence be "reasonable." Defining what is reasonable of course has proved linguistically challenging. Cf. United States v. Jimenez-Beltre 440 F.3d 514, 519 (1st Cir. 2006) (reasonableness assumed where there is " ... a plausible explanation and a defensible overall result." ) In this case the government believes the guideline for aggravated assault is helpful. An aggravated assault carries a seven level enhancement where there is permanent bodily injury and five levels where there is serious bodily injury. See USSG §§ 2A2.2(b)(3)(B)and(C). The total offense level here is 21 (37-46). The restricted guideline sentence is 84 months (7 years). The government believes an upward departure to 96 months (8 years), or one year more than the mandatory minimum, is reasonable and just.

The government is making this recommendation, two years less than the co-defendant, for several reasons. First, the defendant has been steadily employed. His employer gave him a good evaluation and said he would still employ him if he could. The next reason is the defendant has no criminal history points and is a very young man. Third, the defendant's personal history as chronicled in the PSR is gut wrenching. Fourth, though a member of Laos Pride, the defendant does not display the same level of apparent defiance as his co-defendant. And lastly, the defendant is subject to deportation following his incarceration.

For all these reasons, the United States believes a sentence

of 8 years, while stern, is fair and just.

B. GOVERNMENT'S RESPONSE TO THE DEFENDANT'S OBJECTIONS IN HIS SENTENCING MEMORANDUM

The defendant raised objections in his sentencing memorandum. The government responds as follows.

1. Gang Membership

The defendant does not dispute that he is a member of Laos Pride. He does seem to argue that Laos Pride is not a traditional street gang but rather they just hang out with each other and drink beer. The United States disputes this and will present evidence at sentencing. The defendant's remaining arguments are essentially subsumed by the government's sentencing recommendation.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Richard W. Rose
RICHARD W. ROSE
Assistant United States Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001 (fax)
email: richard.rose@usdoj.gov

**CERTIFICATION OF SERVICE**

I hereby certify that on this 29th day of August, 2006, I caused the within Government's Memorandum of Law in Support of Its Motion For Upward Departure and Sentencing Memorandum to be electronically filed with the United States District Court for the District of Rhode Island, using the CM/ECF system. The following participant has received noticed electronically and by fax:

William C. Dimitri, Esq.
462 Broadway
Providence, RI 02909

I further certify that I caused a copy to be mailed by regular mail and fax to:

Robert E. Craven, Esq.
50 Park Row West, Suite 100
Providence, RI 02903

Maureen Bradley
U.S. Probation Officer
U.S. Probation Office
36 Exchange Terrace
Providence, RI 02903

/s/Richard W. Rose
Richard W. Rose
Assistant United States Attorney